The case is new, therefore let the prisoner be remanded until Monday, and I will examine the authorities, and endeavor to form an opinion. On Monday he delivered, in substance, the following opinion: —
The investigation of this subject has involved questions, not only of the first concern in the practice, but of great magnitude as respects the liberty *Page 213 
and safety of the citizen. It must be confessed that my practice has been limited in criminal cases. The first inquiry which presents itself is, what is the practice of the State? Every prosecution is understood to stand of course for trial at the same term in which the bill is found, and must be continued, as in civil cases, upon affidavit on the part of the State or defendant. It is true, as stated from the bar, that no instance has occurred since my acquaintance with the practice of the courts in which a continuance was refused upon the first application, founded on a general affidavit like the present; but it never was made a question whether the Court had the power to refuse a continuance or not.
We will next consider the practice in England, either by the common law or statute, and, lastly, whether the Statute of 1715, c. 16, Ird. 11, is introductive of new principles, so as to make a different practice necessary. By the common law, witnesses for the defendant were not heard on oath, of which Lord Coke complains. 4 Reeve's Hist. Com. Law, 493. 494.
The statute of Anne, c. 9, Anno, 1702, settled the point that witnesses for the defendant in capital cases should be heard on oath as well as for the State. From 2 Haw. 614, it appears that in England the committing magistrate issues subpœnas for the witnesses of the defendant. No such practice has obtained here, nor is the statute of Anne considered in force. Our statute in relation to the commitment of criminals appears to be the same in substance as 1 2 P. M. c. 13. The act is careful in securing the attendance of the prosecutor and witnesses in behalf of the State, directing the committing magistrate to bind them over. No method is provided for securing the attendance of the defendant's witnesses, though their examinations are directed to be taken in writing. In practice, our superior courts have proceeded upon the same principles as the courts of oyer and terminer and jail delivery in England; they combine the power of both courts. Tenn. Law, 1794, c. 1, § 38; 1801, c. 26, § 2; hence we find the same practice in trying criminals for capital offences the first term after commitment.[1] *Page 214 
No practice is understood to have existed in the State authorizing the committing magistrate to compel the attendance of witnesses for a. defendant; they must therefore look to this court for compulsory process.[2] Upon consulting the clerk of this court, who has had considerable experience, he is at a loss to determine whether he has power to issue subpœnas for a defendant before finding of a bill or not. His practice has been not to do so, but uniformly to issue them after the bill is found; considering a case to be then pending in court. Upon this view of the case, in considering the exertions of the defendant to prepare for trial, we must return to the time of finding the bill. And first, whether since that time he has disclosed in his affidavit due diligence, and if he has, taking all circumstances into view, whether the statements in the affidavit are true. When an affidavit is offered it becomes the business of the Court, in criminal cases, to judge of its truth,[3] nor is it a matter of course to continue upon an affidavit in the common form;[4] the true rule appeals to be laid down in D'Eon's case, M'N. 662; Sell. Pr. 422; Tidd's Pr. 500; 6 Bac. 652, Lond. ed.; reported in 3 Burr. 1515. But much better in 1 Bl. 512. These authorities show that a common affidavit is sufficient to continue, unless in the exercise of a legal discretion a well-grounded suspicion arises that the affidavit is materially defective in point of truth. In this case many circumstances combine to produce a suspicion. Three men, all from the county of Anderson, stand accused, and are now in jail, for horse-stealing: Atkins, the defendant, and Morris. Similar affidavits have been offered in each case; upon the first application for a continuance, in the case of Atkins, it was allowed by the Court, immediately afterwards conies this, and one, in the case of Morris; cue two last are suspended for consideration. When the Court perceived in the two last cases that the defendants stated the want of time to procure *Page 215 
witnesses, and knowing the county of Anderson, where the witnesses are stated to reside, is not more than forty miles distant, there certainly was time since the finding of the bill, nine days ago, to procure their attendance.
This in itself furnishes a well-grounded suspicion that this application is not for the attainment of justice, but for delay. If the Court were permitted to take into view other circumstances than those disclosed by the affidavit itself, but little doubt remains that the application is for the delay of justice. It is well known to this court that it requires a guard to secure the prisoners, the jail being entirely insufficient; such a state of things, being immediately under the eye of the Court, cannot be otherwise than known; and it would seem may be judicially weighed in exercising a sound discretion.[1] If this case should be continued the chances of escape would be great. Foster, ed. 1744. 1, 2, and M'N. 659, 660, state that affidavits in common form are sparingly admitted. This however is not the case here, but the reason of the practice stated by these writers ought to have weight, and though we may not be astute in looking for circumstances of suspicion, yet when they do appear the authorities apply. Agreeably to the English practice, the defendant has it in his power to have his witnesses summoned at the time of commitment, which necessarily would dispose a judge there to look more narrowly into an affidavit than is usual here, where no compulsory process for witnesses on the part of the defendant is provided until after the finding of a bill by the grand jury. This idea is also enforced by the ninth section of our Bill of Rights, which requires that the accused shall have compulsory process for obtaining witnesses in his favor. The counsel for the defendant have expressed a desire to be informed whether the Court will hear another affidavit, should they be of opinion the one offered is insufficient for the continuance of the cause. This was opposed by the attorney-general, who observed, that, if opposing affidavits were allowed, he could disprove the affidavit stated. In considering this part of the case, it appears our practice has *Page 216 
not been settled, except in motions for new trials, certiorari and to discharge. In none of these cases will cross-affidavits be heard. Upon motions to continue in criminal cases, cross-affidavits may be received, 3 Term Rep. 405; M'N. 662; but supplementary affidavits are generally refused in the K. B. practice, though otherwise in the C. B. 5 Term Rep. 552; 1 H. B. 10. I have not been able to find a single case where a supplementary affidavit was received. Andr. 71 furnishes a case of an explanatory affidavit, and such a case happened at Jonesborough. It seems probable an additional one would be allowed upon matter puisdarrein affidavit. The affidavit upon which the application is bottomed seems to have been drawn in haste, and not agreeable to form; and as to the disclosure of want of time, somewhat uncertain, in not giving the reason why there was not time; in itself, it would seem there was; but as he does not show any exertions to have been made, as, in the present state of things, there appears a cloud of suspicion hanging over the affidavit as to its truth; and as by a trial a complete view of the case will be attained when a new trial can be granted if necessary; the case ought not to be continued upon the affidavit before the Court. Considering, however, that the person was without counsel when brought to the bar, and was compelled in haste to disclose his case, and most probably the counsel having written it in haste, without an opportunity of deliberating, affidavits may be received in explanation, as well as the additional affidavits of any other than the prisoner, to explain any doubtful point in the affidavit. After a pause of some length the prisoner was commanded to be brought to the bar, and a jury to be impanelled and sworn. When he was brought to the bar, M'CAMPBELL and WILLIAMS, of counsel with the defendant, produced the additional affidavit of Wallen and a supplementary affidavit of the defendant, which they moved should be heard. The attorney objected, and said he understood the question was decided.
[1] 4 Bl. Com. 351.
[2] It is certainly much more compatible with justice and the Constitution that the committing magistrate should be directed to issue subpœnas for the accused, returnable to court. See 1 Burr's Trial, 177-180.
[3] 2 M'N. 666.
[4] 2 M'N. 659.
[1] 2 M'N. 666.